LOYD (UNITED STATES v.). See Case No. 15,637.

LOYHED (PHELPS v.). See Case No. 11,077.

L. P. DAYTON, The. See Case No. 7,192.

L. P. SMITH, The. See Case No. 13,191.

## Case No. 8,585.

### The L. T. KNIGHTS.

[1 Lowell, 396.] [1]

District Court, D. Massachusetts. Dec., 1869.

SALVAGE—DERELICT—PLUNDERING THE VESSEL.

1. A coal-laden schooner was found derelict at sea about fifty miles from Long Island, and brought into Newport by the mate and two men from the coasting schooner Fanny Blake. The salvage service occupied thirty hours, and required a good deal of labor and some risk, as the derelict had holes bored in her hull, which were not discovered for many hours. On a value of $6400, the salvage awarded was $2500.

2. Neither the owners of the Fanny Blake, nor her master, nor her steward, made any demand for salvage, and there was evidence that the two latter, and perhaps some others, had been guilty of embezzling furniture and stores from the derelict. The libellants not concerned in the fraud were awarded the same shares that they would have had in the absence of any embezzlement.

3. A boy who was an actual salvor, and who had refused to join in plundering the vessel, but had taken two articles of very trifling value "as keepsakes," which he had offered to return to the claimant, was awarded a less share than he would otherwise have had.

Libel for salvage, promoted by the first mate and two of the crew of the schooner Fanny Blake. The L. T. Knights was observed early in the morning of Sunday, August 29, 1869, by the libellants and others on board their vessel, at sea, about fifty miles from Long Island, in apparent distress. On boarding her she was found to be coal-laden and derelict, with about three feet of water in her hold. Snow, the mate of the Fanny Blake, and two men, one of whom was the libellant Folio, undertook to bring her to Newport, and succeeded in doing so in about thirty hours. They were kept much of the time at the pumps until late Sunday night, when they discovered and partially stopped the leak, which was occasioned by holes bored in the hull of the schooner, though when and by whom was not discovered. The actual salvors incurred some risk, and both vessels were short-handed after the salving crew had been sent on board the schooner. While the

. [1][Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

vessel was lying at Newport in charge of the salvors, some of them embezzled furniture and stores, and carried them on board the Fanny Blake. The evidence tended to implicate the master and steward of that vessel in this misconduct. No demand for salvage was made by these men nor by the owners of the Fanny Blake.

C. T. Bonney. for libellants.

R. D. Smith, for claimants.

LOWELL, District Judge. The rule in such cases is, that the forfeiture of salvage does not attach to those who have had no part either in the fraud or its concealment. I speak of cases where the evidence is clear and decisive; for it may well be, that the burden of discrimination may lie upon the salvors generally, when embezzlement is shown. The evidence here does not implicate Snow nor Legg, and they should have the same allowance, and no more, as if the distribution were made to all the salvors; for the forfeiture enures to the benefit of the owners of the property, and not to that of the co-salvors. The Rising Sun [Case No. 11,858].

The question concerning Folio's conduct is not so free of doubt. He is a boy of eighteen years, whose service was meritorious, and whose statements both in and out of court appear to have been frank and consistent. His story is, that he took no part in the spoliation, but remonstrated with Ward against it, and was silenced by the asserted authority of the master. That seeing Ward packing articles in a box, he asked him to put in a log-glass for him as a keepsake. That he told Captain M'Intire, the claimant and owner of the L. T. Knights, of this, and offered to pay for the glass, but was told that it was of no consequence. It would seem, too, that he had a small earthen dish; the total value of both articles being less than half a dollar. It is of no consequence that a salvor has made nothing by a fraud, if he is a party to it; but in this instance there is room for a charitable doubt, considering all the facts and circumstances, whether this libellant's acts really amounted to embezzlement, in intent; though, perhaps, technically so in law. I am satisfied that he was no party to the main theft, but opposed it; and taking his whole conduct and declarations together, I feel authorized, though with some hesitation, to say that his conduct may be regarded as heedless rather than dishonest, and as a warning against even heedless conduct in this matter, to diminish, but not wholly forfeit his salvage.

The question of amounts remains. A meritorious case of saving a coal-laden derelict, likely to have foundered at sea, is one for a proportionally large compensation. The total value saved was $6,400. I consider the total salvage reward should be about $2,500. Of this I assign to Peter Y. Snow (the mate who conducted the enterprise), $400; to George V. Folio (an actual salvor), $200; to George B.

Legg (who remained on board the Fanny Blake), $150. The libellants are to have costs. The remaining salvage is forfeited to the claimants.